UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Leonard LUCARZ, Defendant-Appellant.

No. 24936.

United States Court of Appeals, Ninth Circuit.

Argued May 13, 1970.

Decided June 2, 1970.

Gary M. Sundberg (argued), of Willey, Sundberg & Lee, Phoenix, Ariz., for defendant-appellant.

Richard K. Burke (argued), U. S. Atty., Lawrence Turoff, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before BROWNING, CARTER and WRIGHT, Circuit Judges.

EUGENE A WRIGHT, Circuit Judge:

This appeal is by a postal employee from a conviction for theft from the mails. 18 U.S.C. § 1709. We affirm.

The record shows that at approximately 5:00 A.M. on February 10, 1968, appellant Lucarz, a mail clerk in the main post office in Phoenix, Arizona, signed for and acknowledged receipt of a registered mail pouch. It contained 36 registry envelopes filled with the proceeds of the previous day's sale of stamps at a branch post office. Seven hours later, Lucarz reported to his supervisor that the pouch had been cut and the contents were missing.

Following a series of interrogations, postal inspectors obtained from the United States Commissioner a warrant to search appellant's residence and discovered $29,000 in currency. Appellant was arrested, tried, and convicted.

He argues first that his offense, although punishable as embezzlement under 18 U.S.C. § 1711, does not constitute a violation of the statute under which he was prosecuted. He asserts that the registry pouch was used for the internal business of the Post Office, and thus was

not "intended to be conveyed by mail" within the meaning of 18 U.S.C. § 1709.[1]

The Post Office, like everyone else, has the right to use the mails. In this case money from the sale of stamps at a branch post office was handed to the normal registry clerk, put in normal registry envelopes in a normal registry pouch and delivered in the normal course of the mails to the main post office in Phoenix, whence but for appellant it would have been delivered, also in the normal course of the mails, to the Pioneer National Bank.

The treatment the envelopes received was identical to that accorded registry envelopes mailed by private parties, but for the fact that the clerk obtained them from within the post office, rather than through the registry window. We are not faced with the totally different case that would arise were registry envelopes transmitted by courier or by hand or in some other manner not involving the normal course of the mails. We hold that appellant's offense fell within the statute.

The principal contentions on appeal involve the warrant to search appellant's house. The affidavit on which it rested is given in the margin.[2]

1. We agree with appellant that both the offenses contained in 18 U.S.C. § 1709 require proof that the stolen items have been intended to be conveyed by mail. The doctrine of Hall v. United States, 168 U.S. 632, 18 S.Ct. 237, 42 L.Ed. 607 (1898), to the effect that such proof was not required for the second of the offenses created by a predecessor statute, was abrogated by the Act of March 4, 1909, ch. 321, § 195, 35 Stat. 1125. Rev. Stat. § 5467, as the *Hall* case pointed out, made it a crime for a postal employee: (1) to embezzle "any letter, packet, bag, or mail of letters entrusted to him, or which shall come into his possession, and which was intended to be conveyed by mail * * * ;" or (2) to steal or remove valuables from "any letter, packet, bag, or mail of letters which shall have come into his possession * * *."

When § 5467 was amended in 1909 and re-enacted as § 318 of the Criminal Code, the language defining the second offense was modified to punish theft from "any *such* letter, package, bag, or mail," (emphasis supplied). The effect was to incorporate into the second statutory offense the definition of mail matter already provided in the first, including the requirement that it had been intended to be conveyed by mail.

This wording was preserved when § 318 became 18 U.S.C. § 1709 in 1948. Hence the indictment in this case, though couched in terms of the second offense contained in 18 U.S.C. § 1709, properly included an averment that the registry envelopes were intended to be conveyed by mail.

2. (1) "Before Charles P. Thomas. The undersigned being duly sworn deposes and says: That he has reason to believe that on the premises known as 2309 E. Garfield St., Phoenix, Arizona, this is a single family dwelling, the residence of Robert Leonard Lucarz in the District of Arizona.

(2) there is now being concealed certain property, namely 36 pieces of Registered mail addressed to the Pioneer Bank of Arizona, Post Office Box 1095, Phoenix, Arizona, and the contents of said Registered mail, consisting of United States Currency, checks, Bank deposit slips and Paid Postal Money Orders which are the fruits and proceeds of a theft from Registered Mail Pouch Number R 40783–15, the contents of which were taken from the U. S. Post Office, Main Office, Phoenix, Arizona on February 10, 1968.

(3) And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: on 2/10/68 Mr. Robert L. Lucarz, a postal clerk at the Main Post Office at Phoenix, Arizona, receipted for Registered Mail Pouch # R 40783–15, (Commonly known as a Rotary Pouch) which was addressed to the Pioneer Bank of Arizona, Post Office Box, 1095 Phoenix, Arizona 85001. Mr. Lucarz was the only Registry Clerk on duty and had custody of this pouch. At approximately 12:40 P.M. 2/10/68 Mr. Lucarz reported to a Supervisor that the pouch had been cut and the mail contained in the pouch was missing.

(4) Mr. Lucarz was interviewed on 2/10/68 by Postal Inspector Lynn Bell and stated he was certain the pouch had mail in it when he received it. He further stated this pouch had been placed in a utility cart in the Reg-

At the outset, we may reject appellant's contention that the warrant is rendered invalid by the inclusion in the affidavit of Paragraphs (10) and (11).[3] Assuming arguendo that no inference to support a finding of probable cause can arise from the exercise of a defendant's constitutional right to the assistance of counsel, the warrant may nevertheless stand if the remaining allegations clearly demonstrate probable cause. Chin Kay v. United States, 311 F.2d 317 (9th Cir. 1962); Clay v. United States, 246 F.2d 298 (5th Cir. 1957); United States v. Epstein, 240 F.Supp. 80 (S.D.N.Y. 1965).

> istry Section, when received by him at approximately 5:07 A.M. 2/10/68 and that he had not moved the pouch from the utility cart thereafter. Mr. Lucarz also advised Mr. Bell that he had not left the Main Post Office building during his morning coffee break or his lunch break on 2/10/68.
>
> (5) Mrs. Mary Ann Crowley, supervisor, Main Post Office, Phoenix, Arizona, has advised Mr. Bell that at approximately 7 A.M. 2/10/68 she had occasion to enter the Registry Section during the absence of Mr. Lucarz and that Rotary Pouch R 40783-15 was not in the utility cart in which Mr. Lucarz had stated he had placed it, and that Mrs. Crowley found only one pouch in this utility cart, which pouch was labeled to Main Post Office Carriers Fed. Bldg.
>
> (6) Mr. Daniel E. Mahoney, motor vehicle operator, Post Office Dept. Phoenix, Arizona, has advised Postal Inspector W. F. Chaney, Jr., that he watched Mrs. Crowley search the utility cart in the Registry Section and that she did not locate but one pouch in the utility cart.
>
> (7) Mr. Lucarz told Mr. Bell, during an interview on 2/15/68 that he left the Main P. O. Building during his coffee break and had gone to the Y. M. C. A. restaurant on 2/10/68.
>
> (8) Mr. Ronald Suneson, mail handler, P. O. Dept. Phoenix, Arizona, has advised Mr. Bell that he saw Mr. Lucarz put on his coat at about 11:10 A.M. 2/10/68 and Mr. Lucarz told him he was going to lunch.
>
> (9) Mr. Edmund L. Kraus and Lee E. Fretz, Postal Employees, Main P. O. Bldg. Phoenix, Ariz. have advised Mr. Bell that they saw Mr. Lucarz at about 11:45 A.M. on 2/10/68 at the

Nor was the warrant invalid because the parts of the affidavit which detailed the inconsistencies in appellant's story were based ultimately on interrogations prior to which the *Miranda* warnings were given not orally but by means of a printed card. While we see dangers in the use of such cards unaccompanied by an oral warning, this is not a case where any prejudice to appellant resulted. Appellant was not of marginal literacy, nor of imperfect knowledge of the English language. Not only did he sign waiver of rights forms at each interrogation, but he testified at the hearing on the motion to suppress that he had

> back of the Main Post Office Building and it appeared to them that he had just entered the building.
>
> (10) During an interview with Mr. Lucarz on 2/15/68 by Mr. Bell and Mr. Chaney, Mr. Lucarz telephoned attorney Gary Sundberg, who came to the P. O. Inspectors Office and later left the P. O. Bldg. with Mr. Lucarz.
>
> (11) Mr. John Moran, Assistant U.S. Attorney, Phoenix, Arizona has advised Mr. Bell on 2/15/68, (that Mr. Lundberg (sic) requested from him advise (sic) as to whether if his client Mr. Lucarz, will return the Missing Money and leave the employment of the Post Office Department prosecution will not be entertained.)
>
> ---
>
> Signature of Affiant
> Lynn Bell, U.S. Postal Inspector.
> Sworn to before me, and subscribed in my presence, February 15, 1968.
>
> ---
>
> U.S. Commissioner"

3. At the hearing on the motion to suppress, it was stipulated that Attorney Sundberg had not in talking to the Assistant United States Attorney at any time mentioned his client by name, or specifically requested advice as to the possibility of not prosecuting Lucarz. The affidavit was thus technically incorrect. On the other hand, there is here no supportable allegation of bad faith by the law enforcement officials involved, since it is clear that the telephone conversation in fact occurred, and the Assistant United States Attorney, knowing Sundberg represented Lucarz and that Lucarz was under investigation, would have had no difficulty in deducing the purpose and potential beneficiary of Sundberg's call.

read and understood what he signed. Since the statements were constitutionally obtained, their use as a basis for a search warrant was proper. *Cf.* Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We come then to determine whether the allegations of the first nine paragraphs of the affidavit gave the magistrate probable cause to believe the stolen registry envelopes were at defendant's residence. We do so mindful that affidavits are to be interpreted in a common sense and realistic manner, United States v. Ventresca, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and that probable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place, Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

In the case before us, we think it clear that the facts in the affidavit gave probable cause to believe that appellant had broken open the registry pouch. His custody of the pouch, the internal inconsistencies in his story, and the discrepancies between his version and those of others, all point strongly to the same conclusion.

But of course it cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence. If that were so, there would be no reason to distinguish search warrants from arrest warrants, and cases like Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), would make little sense.

Here, however, there was considerably more to the affidavit than a simple showing of probable cause for arrest. The affidavit demonstrated the theft of the sort of materials that one would expect to be hidden at appellant's place of residence, both because of their value and bulk. It showed that appellant had ample opportunity to make a trip home to hide the stolen envelopes, and that he had in fact left the post office for a period of some 35 minutes—time enough, the magistrate may have thought, to go home, but not to seek a more unusual hiding place.

The situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation, as in the normal search-and-seizure case, but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property. United States v. Teller, 412 F.2d 374 (7th Cir. 1969); Aron v. United States, 382 F.2d 965 (8th Cir. 1967); Anderson v. United States, 344 F.2d 792 (10th Cir. 1965); Porter v. United States, 335 F.2d 602 (9th Cir. 1964).

Under the circumstances, and giving due weight to the preference accorded the magistrate's finding in doubtful or marginal cases, United States v. Ventresca, *supra,* at 109, 85 S.Ct. 741, 13 L.Ed. 2d 684, we think the warrant was valid.

Affirmed.