**UNITED STATES of America, Plaintiff,**

v.

**Eric RAMBIS, Defendant.**

**No. 81 CR 323.**

United States District Court,
N. D. Illinois, E. D.

Oct. 22, 1981.

Stephen Connolly, Chicago, Ill., for plaintiff.

Julian Solotorovsky, Asst. U. S. Atty., Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This cause comes on for hearing on the motion of the government to reconsider the October 1, 1981, order of the Court quashing the search warrant of defendant Eric Rambis' home and suppressing the evidence seized pursuant thereto. For the reasons set forth herein, the government's motion is denied.

The Court's responsibility in reviewing a magistrate's determination of probable cause is to determine whether the affidavit sets forth facts and circumstances which would lead a person of reasonable caution to believe that a crime was being committed, or items relating to a crime were located, in the place named. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *United States v. Mirallegro*, 387 F.2d 895, 898 (7th

Cir. 1967). In making such determination, both magistrates and reviewing courts must avoid hypertechnical readings of affidavits which must be interpreted in a "commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Nevertheless, we are mindful that the Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures by requiring that warrants be issued by "neutral and detached" magistrates, *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), supported by affidavits sufficiently specific to ensure that magistrates do not act as rubber stamps for the police. *United States v. Roth*, 391 F.2d 507, 511 (7th Cir. 1967); *see Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964). Neither a magistrate, nor a reviewing court, should have "to use imagination to supply essential details critical to determining probable cause." *United States v. Karathanos*, 531 F.2d 26, 31 (2d Cir. 1976), *cert. denied*, 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976). The affidavit in the instant search must be examined with these guidelines in mind.

On June 20, 1981, agents of the Federal Bureau of Investigation executed a search warrant at the defendant's residence at 4642 West Jerome Street, Skokie, Illinois. The search resulted in the seizure of various items, and the defendant was subsequently indicted and charged with a number of firearms violations under Title 26, United States Code, §§ 5841 *et seq.* and §§ 5851 *et seq.*

The affidavit for search warrant states that Rambis was first observed by FBI agents on June 18 entering and exiting a number of stores with Spiro Anast. Anast had previously discussed with an FBI informant the burning of a building for money, and on June 17 told the informant that the next morning he would meet with the person who would be making detonating devices for the proposed arson and obtain the parts and materials needed to make an electronic detonating device. On June 18, at

11:18 a. m., Anast and Rambis were observed visiting various hobby, electronics, electrical supply, and sports shops. That afternoon, Rambis and Anast were observed driving to Anast's residence, then to a location on Howard Street in Skokie, Illinois. At this point, the two men were seen exiting the car in which they were driving, and walking toward the trunk of the car. The affiant states that Rambis was carrying a brown paper bag which appeared similar to one which he was seen carrying earlier when exiting an electronics store. Anast and Rambis opened the trunk, then Anast was seen closing the trunk and driving away. Rambis was seen walking to and entering a residence at 4642 W. Jerome Street in Skokie; however, the affidavit does not state that Rambis was carrying the brown paper bag at this time.

The instant affidavit would provide probable cause to support the search warrant if it established that the brown paper bag (or other contraband or evidence of the alleged arson) was taken into Rambis' residence or, perhaps, if the affidavit read as a whole otherwise links Rambis' home to some criminal activity. As demonstrated below, it does neither.

The first inquiry may be disposed of readily in spite of the fact that the government would have the Court read the affidavit as establishing probable cause to believe that Rambis was carrying the bag into his residence. No such conclusion is supported by the affidavit. To find probable cause to believe that the materials which Rambis and Anast had been collecting throughout the day of June 18 were located at 4642 W. Jerome Street would indeed require a magistrate to use his imagination to supply missing details. When taken in conjunction with other information contained in the affidavit, which we consider below, although the affidavit may raise probable cause to believe that the defendant Rambis may have been involved in wrongdoing, it "raises no more than an anemic suspicion" that the contents of the paper bag were located in the Rambis residence. *United States v. Whitlow*, 339 F.2d 975, 980 (7th Cir. 1964).

We must next consider whether probable cause may be inferred from the facts set forth in the complete affidavit, even though no direct evidence to link the electronic detonation materials to the Rambis residence is presented. The Court of Appeals for the Seventh Circuit has frankly observed that "[t]he quantum of information needed to support probable cause to search a suspect's house after the suspect has been linked to a crime is unclear." *United States v. Spach*, 518 F.2d 866, 872 (7th Cir. 1975) (citations omitted). However, a series of decisions in the Ninth Circuit provide some guidance.

In *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968), the court makes it clear that the facts supporting a search warrant must link the criminal items to the place to be searched because, as the court stated subsequently, "it cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence. If that were so there would be no reason to distinguish search warrants from arrest warrants . . ." *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970). Nevertheless, construing an affidavit in the "commonsense" fashion that *Ventresca* requires "may result in the inference of probable cause to believe that the criminal objects are located in a particular place to which they have not been tied by direct evidence." *United States v. Valenzuela*, 596 F.2d 824, 828 (9th Cir. 1979), *cert. denied, Lizarraga v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). Facts and circumstances which the court may properly consider in drawing this inference include the "type of crime, the nature of the . . . items, the extent of the suspect's opportunity for concealment and normal inferences as to where a criminal would be likely to hide" the property to be searched for. *United States v. Lucarz, supra* at 1055. *See United States v. Teller*, 412 F.2d 374 (7th Cir. 1969), *cert. denied*, 402 U.S. 949, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971).

Applying these principles, the Ninth Circuit in *Valenzuela, Lucarz*, and in *United*

*States v. Spearman*, 532 F.2d 132 (9th Cir. 1976), inferred probable cause to search a location not tied by direct evidence to the property sought to be recovered. In *Lucarz*, a postal employee was suspected of stealing the contents of a mail pouch. The affidavit presented in support of a warrant to search the employee's residence showed that Lucarz was away from the post office for approximately thirty-five minutes. Given, then, his limited opportunity to conceal the stolen items, the court deemed it permissible for the magistrate to infer that Lucarz could have hidden the items at home but not in a more unusual place. Furthermore, the court thought that the theft involved "the sort of materials that one would expect to be hidden at appellant's place of residence, both because of their value and bulk." *Lucarz, supra* at 1055. In *Spearman*, direct evidence was presented in the affidavit that the defendant was engaged in the selling of heroin, and that he was observed in a particular automobile on numerous occasions. The affidavit also contained the police officer's assertion that "[i]t is commonplace for dealers of heroin to have heroin that is packaged for sale in the place where they live or sell from, in their vehicles or on their persons." *Spearman, supra* at 133. Thus, the court found probable cause to search the automobile to be fairly inferrable despite the absence of direct evidence or observation tending to show that heroin would be

found in that location. Similarly, in *Valenzuela*, the affidavit set forth facts indicating that one of the defendants had made deliveries to a person known to be a heroin dealer, and on one occasion, a delivery occurred after this defendant left his house and drove to the place where the transaction occurred. While there was no direct evidence that heroin would be found at this defendant's residence, the affidavit contained an experienced narcotics officer's statement that heroin would be found there. The court determined that on these facts the affidavit was sufficient to permit an inference of probable cause to search the defendant's house. *Valenzuela, supra* at 828–29.

On the facts of the instant case, no similar inference to support probable cause to search the Rambis residence is permissible. The affidavit, to be sure, contains statements and facts which appear to implicate Rambis in criminal activity. Nevertheless, the facts clearly do not establish a nexus between the Rambis home and the alleged criminal activity.[1]

The instant case also differs from the situation in *Lucarz* where the suspect had only a few minutes to find a hiding place for the items sought to be located through a search warrant. Rambis and Anast made a number of stops on June 18, including a stop at Anast's house, and the arrest of Anast and his companion at the target

---

1. The affidavit also recites that Anast and another individual were arrested at the building to be burned on June 19. At this time a brown vinyl bag was found directly behind them. A search of the bag pursuant to a warrant revealed that it contained an electronic detonating device and a radio transmitter, Futabi Model 4L. Affidavit ¶ 15. On June 20, a Bureau of Alcohol, Tobacco and Firearms agent went to the hobby shop which Anast and Rambis had been seen entering and exiting carrying packages and boxes on June 18. An examination of the hobby shop sales invoices reflected that on June 18 an individual purchased four radio transmitters, two of which were Futabi Model 4L. The special agent then interviewed the owner of the sports shop to which Anast and Rambis had gone on June 18. The owner told the agent that two persons bearing a description similar to Anast and Rambis had purchased twelve pounds of smokeless gun pow-

der on June 18. Affidavit ¶ 17. Although all of these items lawfully purchased from the sports and hobby shops were never recovered, there is no support for a conclusion that one may reasonably infer that any of these materials would be found *at the Rambis residence*. The government apparently is urging that the fact alone that all the items *lawfully purchased* by Anast and Rambis at the hobby shop were not recovered, justifies issuance of a warrant to search Rambis' home. We cannot accept this notion. Were we to uphold the validity of the instant search warrant on this basis, this Court in effect would be adopting a proposition that the very act of charging a defendant with an offense in and of itself creates the requisite probable cause to secure a warrant to search that defendant's residence for unrecovered evidence of the crime. For the reasons set forth in the body of this opinion, this proposition is not consistent with the fourth amendment.

building was not until late the following afternoon. It further differs from *Lucarz* in that there is no particular reason to believe that the items, due to their bulk or value, would necessarily be kept in the home. Also, whatever the value to be placed upon an officer's opinion as to where he expects to find certain items, unlike in *Spearman* and in *Valenzuela*, there is no statement in the instant affidavit that the officer believes the items sought—here, electronic detonation materials—are customarily kept in an arson suspect's place of residence. Finally, unlike in *Valenzuela*, there was no direct observation of the suspect going from his home to the scene of a crime which would permit an inference that items used in the commission of a crime were kept at home. Therefore, it would be little more than pure speculation, not reasonable inference, to conclude from the affidavit presented to the magistrate in this case that electronic detonation materials, or in particular, the electronic detonation materials intended for use in the proposed arson to which Anast agreed, would be found at the Rambis residence.

The government's petition for rehearing relies primarily on two First Circuit opinions: *United States v. Melvin*, 596 F.2d 492 (1979), and *United States v. Picariello*, 568 F.2d 222 (1978). Although, like those of the Ninth Circuit, these decisions are not binding upon this Court, to the extent that they are probative they are also distinguishable. In *Melvin*, the affidavit for search warrant alleged that because of its nature and characteristics, the bomb involved therein could only have been manufactured and assembled in a workshop. The First Circuit stating that "while the question [of the sufficiency of the affidavit] is a close one, we believe it was permissible for the issuing judge to infer that evidence or instrumentalities might be found in appellant's home." In the instant cause, the affidavit does not suggest that Rambis' home was a bomb assembly workshop or that it was in any other manner involved in the offense. To the contrary, the only reference in the affidavit to Rambis' home is that the brown bag was seen in Rambis' hand *outside* his house. The clear inference from the affidavit, however, is that the bag was placed in Anast's car trunk before Rambis entered his residence. In *Picariello* bombs exploded at several New England public facilities. Highly explosive dynamite, which was part of a shipment recently stolen, was recovered after a high-speed chase from a wrecked car in which the defendant was riding. Defendant was a suspect in this theft as well as the bombings. Not all the stolen explosives were accounted for after the recovery from the wrecked auto. A search warrant to recover the balance of the explosives was issued for defendant's home. The inherent dangers to the community because of the volatile nature of the items to be seized obviously were considered by the Magistrate in issuing the *Picariello* warrant. The affidavit in the instant cause suggests no similar scenario of imminent danger. The items to be seized were not, as they were in *Picariello*, stolen explosives which could not otherwise be obtained lawfully by the defendant. Rather, the items sought to be seized herein were lawfully purchasable by any citizen at any hobby or sporting goods store.

It is clear that the United States Supreme Court has construed the fourth amendment so as to provide greater protections from searches of homes by law enforcement officials than for similar searches of non-residences. Thus, in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court held that an otherwise permissible warrantless seizure would not be tolerated when conducted in a private home. The *Payton* court stated:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . homes . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t

the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734. *Id.* at 589–90, 100 S.Ct. at 1381–82. While it is true that *Payton* dealt principally with the warrant requirement for a residential search and that the instant search was in fact conducted with a warrant, the Court's rationale to the effect that the home enjoys greater protection from "unreasonable governmental intrusion" than the non-residence is nonetheless applicable herein. Accordingly, before the government may invade "the zone of privacy . . . bounded by the unambiguous physical dimensions of an individual's home," it must present facts showing probable cause as to some nexus between the home to be searched and the alleged criminal activity. Thus, in the case of a search warrant, the affidavit must demonstrate a reasonable likelihood that criminal activity and/or fruits or evidence of the crime are located at the residence to be searched. In this regard, the instant affidavit is patently defective.

For the reasons stated herein, the government's motion to reconsider the Court's order quashing the search warrant and suppressing the fruits of the search of Rambis' residence is denied. It is so ordered.