**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Eric RAMBIS, Defendant-Appellee.**

**No. 81–2857.**

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1982.

Decided Aug. 20, 1982.

As Amended Aug. 24, 1982.

See also, D.C., 526 F.Supp. 866.

Patrick Deady, Asst. U. S. Atty., Chicago, Ill., for defendant-appellee.

Patrick J. Williams, Connolly, Dwyer & Ekl, Chicago, Ill., for plaintiff-appellant.

Before BAUER, WOOD, and CUDAHY, Circuit Judges.

BAUER, Circuit Judge.

In this appeal the government challenges the district court's order quashing a search warrant. We conclude that the affidavit supporting the search warrant established probable cause, and, therefore, we vacate the order.

The affidavit in support of the search warrant set forth the following facts. Spiro Anast told a government informant that he would set fire to a warehouse in Ham- mond, Indiana using an electronic detonat- ing device which his accomplice would make. On June 16, 1981, Anast and the informant drove to Hammond to examine the warehouse. Anast told the informant that he was going to meet Eric Rambis, the accomplice who was going to make the det- onating device, the next day.

On June 17, 1981 surveillance agents watched Anast closely. They saw Anast drive from his home to a nearby restaurant where he met Rambis. Anast and Rambis drove to several stores, many of which sold electronic supplies, and left these stores carrying packages. Next, they drove back to Anast's home and parked in the drive- way. Anast walked to the back of the car, then got back inside the car and drove to a house in Skokie, Illinois. Both men got out of the car. Rambis was carrying a bag similar to one he had carried out of a store earlier that day. They walked to the back of the car and opened and closed the trunk. Anast drove away and Rambis walked into the house. The agents could not see wheth- er Rambis carried anything into the house.

On June 18, 1981, FBI surveillance agents followed Anast as he and Emil J. Crovedi, a second accomplice, drove to the Hammond warehouse. They stopped en route to fill a can with gasoline, which they placed in the trunk. As Anast and Crovedi were about to enter the warehouse the agents arrested them. The men were standing in front of two containers of gas, an open paper bag containing pipe wrenches and gun powder, and a zipped brown vinyl bag containing an electronic detonating device and a radio transmitter when arrested.[1]

FBI agents continued their surveillance of Rambis. On the same day that Anast and Crovedi were arrested in Indiana, the FBI agents observed Rambis eating dinner inside the Skokie house where Anast had left him after their shopping trip. The following day a special agent went to some of the stores at which Anast and Rambis had shopped. Based on invoices and owner descriptions, the agent determined that

1. A search warrant was obtained before the bag was opened.

Anast and Rambis had purchased four transmitters and twelve pounds of gun powder.

The FBI agents submitted an affidavit setting forth the above-described information in support of a search warrant for the Skokie home. The magistrate issued the search warrant and a warrant for Rambis' arrest. A search of the home uncovered a sales receipt for four radio transmitters, three transmitters, an empty transmitter box, batteries, electrical wire, solder, electrical tape, solar ignitors and numerous tools. Rambis was arrested.

The trial court held that the affidavit supporting the search warrant did not establish probable cause because it did not allege facts showing a sufficient nexus between the Skokie house and the intended arson. It held that it was not reasonable to infer that the purchased items would be in the house because there was no evidence that Rambis had carried any of them inside. The government filed a motion to reconsider, urging the trial court to consider whether a good faith exception to the exclusionary rule precluded the suppression of evidence seized pursuant to a search warrant. This motion was also denied, 526 F.Supp. 866.

The government raises two issues on appeal. As might be expected, it contends that there was more than sufficient evidence to satisfy probable cause and that in reviewing this finding, the district court did not accord proper deference to the magistrate's determination. Second, the government urges that the exclusionary rule should not be applied because the agents acted in good faith.

I

A magistrate, who has considerable experience evaluating affidavits in support of search warrants and the reasonable inferences which flow from the sworn facts, is in the best position to determine if probable cause exists. Frequently, the magistrate is familiar with the affiant or the government informant as well as the circumstances which generally indicate that items connected with criminal activity are likely to be at a particular location. For these reasons, the magistrate's determination of probable cause is given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated. *United States v. Coppage*, 635 F.2d 683 (8th Cir. 1980).

Whether the information in the affidavit establishes probable cause is a determination based solely on written evidence. Since this determination involves the application of law rather than an evaluation of factual evidence, on review the appellate court is not limited to a determination of whether the district court's finding was clearly erroneous. It must independently review the sufficiency of the affidavit, *United States v. Minis*, 666 F.2d 134 (5th Cir. 1982), recognizing that doubtful cases should be resolved in favor of upholding the warrant. *United States v. Allen*, 588 F.2d 1100 (5th Cir.), *reh. denied*, 593 F.2d 709, *cert. denied sub nom. Perkins v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979).

Probable cause is established whenever there is a reasonable probability of finding the desired items in a particular location. *United States v. Williams*, 605 F.2d 495 (10th Cir.), *cert. denied*, 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 189 (1979). Thus, the magistrate was correct in issuing the search warrant of the Skokie home if it was probable that: (1) Rambis was the accomplice who was going to make the device; and (2) he took the package he was carrying when he emerged from the car into the house. We find these assumptions eminently reasonable. First, logic dictates that since the package was already in Anast's car, Rambis would not have taken it out of the car if Anast intended to retain possession. Second, if the men had planned to keep the package in the trunk, they had ample opportunity to do so earlier in the day when

they stopped at Anast's home. Moreover, since Anast had already identified Rambis as the maker of the device, it was reasonable to assume that Rambis would take the materials needed to make the device with him. Finally, while the surveillance agents could not see well enough to state that Rambis carried the package into the house, they could not say that he did not. In view of the facts that Rambis was going to make the device, had obviously been using the Skokie home as his residence, at least for a few days, and would be likely to assemble the device in a workshop or basement, there was a very reasonable probability that the items necessary to make the device would be inside the Skokie home.

Rambis makes much of the fact that there was no evidence that the Skokie home was his residence. He also argues that nothing in the affidavit negates the assumption that the device could have been prepared in Anast's car. These arguments are not persuasive. Whether the Skokie home was Rambis' permanent residence or merely a temporary workshop is irrelevant to the issue of whether it is likely that Rambis was assembling the detonating device there. The telling fact is that Rambis had access to the house, was seen entering it immediately after he and Anast had purchased materials to make a detonating device, and was still there the next day. The lack of evidence that the Skokie house was Rambis' residence makes it no less likely that Rambis' materials and tools would be located inside the house and that he was assembling the detonating device there.

Further, we do not believe, as Rambis contends, that the government had the burden of negating the assumption that the device could have been prepared in Anast's car. The affidavit need only allege specific facts establishing a reasonable probability that the items sought are likely to be at the location designated; the affidavit need not also negate every argument that can be asserted against that probability. *United States v. Williams*, 605 F.2d 495 (10th Cir.), *cert. denied*, 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 189 (1979).

In reaching its decision that the affidavit did not establish probable cause, the district court relied on three Ninth Circuit opinions: *United States v. Valenzuela*, 596 F.2d 824 (9th Cir.) *cert. denied sub nom. Lizarraga v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *United States v. Spearman*, 532 F.2d 132 (9th Cir. 1976); *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970). These cases address the issue of whether probable cause to search a location could be inferred in the absence of direct evidence linking the location with the property sought to be recovered. In each of these cases the Ninth Circuit found sufficient circumstantial evidence to establish a nexus between the suspected criminal activity and the place to be searched.

In *Valenzuela* it held that the affidavit established probable cause because it contained an experienced narcotics officer's statement that heroin would be found at the specified location. Similarly, in *Spearman* the affidavit contained a police officer's statement that known heroin dealers commonly kept drugs at their homes, in their vehicles, or on their persons. Since the defendant was a known drug dealer, the court found probable cause to search his car. Finally, in *Lucarz* probable cause was established by the fact that the defendant, who was suspected of stealing the contents of a mail pouch, was gone from the scene of the crime for only thirty-five minutes. The *Lucarz* court held that given the limited time period in which the defendant had to hide the stolen items, it was probable that Lucarz had time to hide the stolen mail in his home but not in a more unusual place. It also noted that stolen mail, because of its bulk and value, would likely be hidden in a home.

Comparing the facts supporting probable cause in these three cases with the facts of this case, the district court concluded that "no similar inference to support probable cause to search the Rambis residence is permissible." *United States v. Rambis*, 526 F.Supp. 866 at 869 (N.D.Ill.1981). We cannot agree. It is undisputed that: (1) Rambis was to make the detonating devices; (2)

Anast and Rambis purchased materials to make the devices; (3) after shopping they stopped at Anast's house but did not go inside; and (4) when Anast's car stopped at the Skokie house Rambis got out of the car with a package and went inside. The reasonable inference is that Rambis took the package into the house in order to assemble the detonating device. We believe that the nexus between the intended arson and the Skokie house is as close as the connection between: (1) the possession of heroin and the possessor's home in *Valenzuela*; (2) the sale of heroin and the dealer's car in *Spearman*; and (3) the stolen letters and the appellant's home in *Lucarz*. Since the factual similarities between the Ninth Circuit cases and the facts here are significant, we believe that the same result, upholding the search warrant, should obtain.

Whether there is a sufficient nexus between the items to be seized and the place to be searched to establish probable cause depends on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would hide the items. *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970). Applying these criteria to the affidavit here, we find ample evidence of probable cause.

The crime involved here, intended arson, required that a detonating device be assembled. A reasonable inference is that assembly of this device would require simple tools and materials commonly found in a home. Since Anast and Rambis had purchased the necessary materials for making the device just before stopping at the house where Rambis was staying, an equally reasonable inference is that Rambis took the materials inside. This inference is strengthened by the fact that although surveillance agents kept close watch on the men throughout the day they saw nothing to indicate that the men had stored the materials elsewhere.

We hold that the facts and circumstances described in the affidavit support the inference that the items were inside the home. The magistrate could reasonably rely on these facts because the affiant was an experienced agent who had worked for the FBI for seven and a half years and the informant had proven reliable in connection with prior arson investigations. There was ample evidence from which the magistrate could conclude there was probable cause to issue the search warrant.

Moreover, we cannot agree with the district court that *United States v. Melvin*, 596 F.2d 492 (1st Cir. 1978), and *United States v. Picariello*, 568 F.2d 222 (1st Cir. 1978), upon which the government heavily relied, are distinguishable. In *Melvin*, the appellant, who owned a tavern, had been observed at the tavern shortly before a bomb was exploded. The affidavit in support of a search of appellant's home stated that: (1) appellant was owner of the tavern and was seen there just before the explosion; (2) because of the materials needed to make the type of bomb used, police believed the bomb would more likely be assembled in a workshop than a vehicle; and (3) it was the collective opinion of the law enforcement officers working on the case that appellant was responsible for the explosion. The court found these facts sufficient to establish probable cause.

The district judge distinguished *Melvin* on the fact that there the affidavit stated that the police believed the appellant had a bomb assembly workshop in his home whereas the affidavit here did not suggest that Rambis had a similar workshop in the Skokie home. We do not consider this factual difference significant for the statement suggesting that the appellant had a bomb assembly workshop in his home was merely opinion, unsupported by concrete evidence. Thus, the lack of a similar statement in the affidavit here does not compel a finding that there was no probable cause. In fact, there is greater support for probable cause in this case than in *Melvin* because here police already had evidence that Rambis was the accomplice who was to make the detonating device and that he had purchased the necessary materials to carry out the project.

Similarly, we do not believe that the holding in *Picariello* supports the quashing of

the search warrant. The district court found *Picariello* inapposite because that case involved missing explosives which posed an immediate danger to the community. It concluded that the inherent danger of these explosives was "obviously considered by the Magistrate in issuing the *Picariello* warrant." *United States v. Rambis,* at 870 (N.D.Ill.1981). The district court misreads *Picariello.* The discussion of the inherent dangers of the explosives was totally unrelated to appellant's claim that the affidavit supporting the search warrant of his apartment was defective because it did not state any fact from which an inference could be drawn that the property sought would be located there. Rejecting this argument, the *Picariello* court found that such an inference was reasonable. *Picariello* held that once a defendant has been tentatively linked to the property sought and has been seen entering and leaving a location where he had the opportunity to store that property, probable cause to search the location has been established. 568 F.2d at 227.

Thus, neither the Ninth Circuit cases nor the First Circuit cases suggest that probable cause is lacking in this case. We hold that the facts and circumstances described in the affidavit were sufficient to establish probable cause and that the issuance of the search warrant was proper.

We note that the Seventh Circuit has not yet addressed the issue of whether a good faith exception to the exclusionary rule should be adopted in the context of seizures made pursuant to a search warrant. However, having decided that the affidavit established probable cause, we need not reach that question in order to decide the controversy here. We leave that question for another day.

Accordingly, the order quashing the search warrant is

VACATED.