**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Manuel HERRERA, Defendant-Appellant.**

No. 84–2498.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1985.

Decided March 13, 1985.

Nicholas A. DeJohn, Nicholas A. DeJohn & Assoc., Ltd., Chicago, Ill., for defendant-appellant.

Thomas J. Scorza, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and JAMESON, Senior District Judge.[*]

JAMESON, District Judge.

Manuel Herrera appeals his conviction of conspiracy to distribute heroin and to possess heroin with intent to distribute it, in violation of 21 U.S.C. § 846 (Count One), and two counts of possessing with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), (Counts Two and Four). We affirm the conviction on Counts One and Two and reverse on Count Four.

### I. Factual Background

On January 16, 1984, Sgt. Maurice Dailey and other Chicago police officers assigned as agents of the Drug Enforcement Administration (DEA) Chicago Police Task Force, arrested Roberto Herrera and Miguel Cano in Hanover Park, Illinois, after Herrera had delivered about 250 grams of a brown heroin mixture in a white plastic bag to Cano. On January 17, pursuant to a search warrant, a search was conducted of Roberto Herrera's apparent residence. Brown heroin, heroin diluents, plastic bags and beige masking tape were discovered in a footlocker.

On March 26 or 27, 1984, Sgt. Dailey received an anonymous telephone call at the DEA offices in Chicago from a female with a Latin accent. She asked Sgt. Dailey if he was the officer who had arrested Roberto Herrera. When he replied "Yes," she said that they were still selling heroin and that they had just gotten a big load of heroin. When Sgt. Dailey asked who "they" were, the caller said, "The Herreras." She then said that the heroin was at 8143 Northway Drive in Hanover Park, Illinois, and that "Javier" had the house there. The caller then hung up.

Sgt. Dailey contacted the utility companies and learned that Javier Lechuga was the subscriber for the telephone and electricity at the address which the informant had given. A DEA NADDIS[1] computer check revealed that Javier Lechuga was believed to be a heroin source-of-supply in the Chicago area. The 8143 Northway Drive address is about one-half mile from the scene of the January 16, 1984 arrest of Roberto Herrera and Cano.

On March 28, 1984, at about 7:00 A.M., Sgt. Dailey and several other DEA agents began surveillance at 8143 Northway Drive. After several drives up and down the street, Sgt. Dailey saw four white plastic garbage bags on the lawn at 8143 Northway Drive. Garbage was similarly placed in front of other homes in the area. When the garbage truck came to pick up the garbage around 10:00 A.M., Sgt. Dailey asked the driver to pick up the garbage bags at 8143 Northway Drive as usual but to keep them separate and give them to Sgt. Dailey further down Northway Drive. The driver did as requested.

Sgt. Dailey went through the garbage and found numerous open plastic bags and bag pieces. The bags taped with beige masking tape resembled the heroin pack-

---

[*] The Honorable William J. Jameson of the District of Montana, sitting by designation.

[1] Narcotics and Dangerous Drugs Information System.

ages that had been recovered from Roberto's footlocker at his residence on January 17. A closer inspection of the bags revealed traces of brown powder. Sgt. Dailey field tested the powder which showed a positive reaction for the presence of heroin. Sgt. Dailey estimated that the bags had once contained 500 grams of heroin. Sgt. Dailey then went to his office to begin the process of obtaining a search warrant for 8143 Northway Drive for narcotics. He assigned several agents, including Robert Irwin, to remain on surveillance.

At about 2:00 P.M. two cars drove into the driveway at 8143 Northway Drive within moments of each other. The driver of each car entered the house through the front door. At about 2:15 P.M. both left the house. Irwin saw one, later identified as Manuel Herrera, carrying a brown paper bag which he was putting under his jacket. Irwin saw the other man carry a clear plastic bag. Each got into his car and drove off. The agents on the scene stopped the cars. Herrera was ordered out of the car. The brown paper bag was seized from the ground in front of Herrera where it had fallen from his jacket. Inside the bag was a plastic bag which contained brown heroin. The drivers of both cars were arrested. Miguel Santana-Ortiz was the other man arrested. The plastic bags seized from Santana-Ortiz also contained brown heroin. A key was found on Santana-Ortiz which fit the front door at 8143 Northway Drive.

Just after the arrests, two agents searched 8143 Northway Drive for any other person. No one was discovered. Sgt. Dailey obtained a search warrant for 8143 Northway Drive. The search revealed a footlocker in the laundry room which contained seven packages of brown heroin, a gun, money, a scale, tape and plastic bags. In the kitchen the search revealed Santana-Ortiz' prescription medicine bottle and his receipt for a car stereo. The agents also found the registration receipt for the car which Herrera had been driving. There were also several envelopes addressed to Javier Lechuga and the lease for the house in Lechuga's name.

## II. Proceedings in District Court

Herrera and Santana-Ortiz were both charged in Court One of the indictment with conspiracy to distribute and to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Count Two charged that on March 28, 1984, Herrera possessed with intent to distribute approximately 499.33 grams of a heroin mixture, in violation of 21 U.S.C. § 841(a)(1). Count Three charged Santana-Ortiz with a similar offense. Count Four charged that both Herrera and Santana-Ortiz possessed with intent to distribute another 1114.30 grams of heroin mixture.

Herrera moved to suppress all the evidence seized in the search of his person and vehicle incident to his arrest on March 28, 1984, claiming that the officers lacked probable cause to make the arrest. Santana-Ortiz made similar motions to suppress and also to quash the search warrant. Following a two-day suppression hearing the district court denied all of the motions and subsequently entered written Findings of Fact and Conclusions of Law.

The trial court held that because neither defendant had a legitimate expectation of privacy in the garbage, citing *United States v. Kramer*, 711 F.2d 789, 792 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983), neither could object to the admission of the evidence seized from the garbage. Likewise, neither, based on *Rawlings v. Kentucky*, 448 U.S. 98, 104–06, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980), could object to the introduction of evidence seized from the other defendant.

Herrera had not moved to suppress the evidence found in the house search, so the court held that "he has waived objection to the use of that evidence," citing *United States v. Jefferson*, 714 F.2d 689, 693–94 & n. 3 (7th Cir.1983).

The court found probable cause to arrest both defendants and concluded that the evidence seized from Herrera was admissible because incident to a lawful arrest. The court also found the search warrant

for the search of 8143 Northway Drive to be valid.

Santana-Ortiz pleaded guilty to Counts Three and Four. Herrera waived a jury trial. The court found Herrera guilty of each count with which he was charged. He was sentenced to ten years, followed by a special parole term of 25 years on Count One. On Counts Three and Four Herrera was placed on probation for five years to run concurrently with each other, as well as the special parole term.

### III. Contentions on Appeal

Appellant contends that (1) he was arrested without probable cause and the search and seizure of items incident to the arrest should have been suppressed; (2) he was not proven guilty beyond a reasonable doubt on Counts One and Four; and (3) the trial court abused its discretion in imposing sentence in an improper hearing.

### IV. Probable Cause to Arrest

Herrera contends that the arresting officers "did not have the requisite particularized person (sic) probable cause to arrest" him. He alleges that this is so because the totality of the circumstances does not evidence a nexus between Herrera and the house. He contends that the DEA officers had decided to make the arrest upon Herrera's entry into the house. At that time, Herrera argues, there was no connection between Herrera and the house. Herrera seems to concede that the agents did have probable cause to believe that the house was a drug trafficking center.

The Government contends that the decision to arrest was made after Agent Irwin saw Herrera carrying a brown bag when he left the house. Herrera claims that he had placed the bag under his jacket before leaving the house so that even if the agents did decide to arrest him after he left the house, there was no increased indicia of cause upon his exit.

■■■ It is unclear from the record exactly when the agents decided to make the arrest. Herrera's cite to the record to support his contention merely indicates that

the agents decided to make the arrest during a radio conversation. The district court concluded that the decision was made after the suspects were seen carrying the parcels. Given the ambiguity in the record, this finding is not clearly erroneous and therefore will be upheld. *See United States v. Covelli*, 738 F.2d 847, 853 (7th Cir.1984). The district court also concluded that Agent Irwin had seen the brown bag as Herrera left the house. The court had the opportunity to assess the credibility of the witnesses. Its determination that Agent Irwin was more believable than Herrera is not clearly erroneous. *Id. See also United States v. Mattes*, 687 F.2d 1039, 1042 (7th Cir.1982).

Herrera argues further that even if the decision to arrest was made after Agent Irwin saw him carrying the brown paper bag as he left the house, that fact does not give rise to the necessary nexus between Herrera and the house. In response to this argument the district court, in its oral disposition of the suppression motion, discussed *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir.1982). In *Rambis* this court vacated a district court order quashing a search warrant. The trial court[2] held that the affidavit supporting the search warrant did not establish probable cause "because it did not allege facts showing a sufficient nexus between the Skokie house and the intended arson." This court disagreed, concluding that undisputed facts supported a reasonable inference that the arson apparatus was located in the house in Skokie, Illinois:

> (1) Rambis was to make the detonating devices; (2) Anast and Rambis purchased materials to make the devices; . . . and (4) when Anast's car stopped at the Skokie house Rambis got out of the car with a package and went inside.

*Id.* at 623–4.

The district court concluded, and we agree, that in line with *Rambis*, the facts known to the agents at the time of the arrest of Herrera support a reasonable in-

---

**2.** Judge Aspen was also the district judge in

*Rambis*, 686 F.2d 620.

ference that Herrera was committing a narcotics offense at the time of his arrest. *See also United States v. Fleming,* 677 F.2d 602, 605–06 (7th Cir.1982). The trial court aptly summarized the facts supporting the conclusion of probable cause to arrest:

> The anonymous tip, corroborated by the utility and NADDIS information, had given Sgt. Dailey cause to believe narcotics were located at 8143 Northway Drive. Indeed, the recovery of the heroin residue and assorted plastic bags in the legally unobjectionable search of the garbage at the suspect residence established probable cause to believe there was narcotics in the house—the observed facts read in the light of Sgt. Dailey's experience reasonably led to the conclusion that narcotics trafficking preparations had recently occurred in 8143 Northway Drive. Then, when both defendants showed up there simultaneously (while a search warrant was already in progress) and left the house after a few minutes carrying probable narcotics parcels, the agents reasonably drew the conclusion that the defendants were removing narcotics from the house.

■ Herrera argues that not everyone who carries a brown bag is engaged in a narcotics transaction. Although that is true, probable cause for arrest does not require that every inference in a chain of events be susceptible only of a nefarious explanation. *United States v. Fleming,* 677 F.2d at 605–06.

■ We agree with the district court that Sgt. Dailey and the other agents had probable cause to make the arrest; and the court accordingly properly denied the motions to suppress the evidence seized incident to the arrest.

## V. Sufficiency of the Evidence

In *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984) we set forth the test for determining the sufficiency of the evidence to sustain a conviction:

> In examining appellant's challenge to the sufficiency of the evidence, we must review all the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to the government. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The test is whether, after viewing the evidence in the light most favorable to the government, *"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). We have stated that it follows from this test that "when the factfinder is asked to draw conflicting inferences from the facts in evidence in order to choose between conflicting hypotheses, the reasonable doubt test requires the reviewing court to consider the evidence according to the prosecution's inferences." *United States v. Moya,* 721 F.2d 606, 610 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984).

*See also United States v. Perry,* 747 F.2d 1165 (7th Cir.1984), restating the sufficiency test as applied both to narcotics conspiracy and constructive possession charge.

### A. Count One—Conspiracy

■ Herrera argues that the evidence was insufficient to convict him of the charges of conspiracy to distribute and possess with intent to distribute heroin. A conspiracy is a "combination or confederation between two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." *United States v. Mayo,* 721 F.2d 1084, 1088 (7th Cir.1983). Due to the nature of a conspiracy it must often be proved by circumstantial evidence. *See United States v. Redwine,* 715 F.2d 315, 320–321 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). To prove a conspiracy, the Government must prove that Herrera knew of the conspiracy to distribute drugs and that he intended to join and associate himself with its criminal design and purpose. *United States v. Perry,* 747

F.2d at 1169. *See, e.g., United States v. Caicedo-Asprilla,* 632 F.2d 1161, 1166 (5th Cir.1980).

■ The circumstantial evidence, considered according to the prosecution's inferences, does indicate that Herrera knew of the conspiracy to distribute drugs and that he intended to participate in the criminal design and purpose of that conspiracy. Evidence was found at 8143 Northway Drive which linked both Herrera and Santana-Ortiz to that address. The vehicle registration found in the kitchen was for the vehicle Herrera was driving. The prescriptions and car stereo receipt were Santana-Ortiz's. He also had a key to the house. Herrera and Santana-Ortiz arrived at 8143 Northway Drive simultaneously. They left the house together some fifteen minutes later, each in possession of almost exactly 500 grams of heroin.

## B. Count Four—Possession of the Heroin in the Footlocker

■ Herrera was convicted on Count Four of possession with intent to distribute the heroin in the footlocker. He argues that the evidence was insufficient to convict him. It is apparent that Herrera did not have actual possession of the footlocker. The question, then, is whether he had constructive possession. In order to establish constructive possession the Government must show an intent and an ability to exercise dominion and control over the footlocker. There must be a nexus between Herrera and the footlocker. *See United States v. Galiffa,* 734 F.2d 306, 316 (7th Cir.1984); *United States v. Perry,* 747 F.2d at 1171.

■ There was no showing that Herrera had the ability to exercise dominion and control over the footlocker. Neither Santana-Ortiz nor Herrera had a key to the footlocker. No key was found in an extensive search of the house. The footlocker was locked when discovered during the search of the house and had to be forced open in order to search its interior. Herrera's fingerprints were not found on the footlocker or any of its contents. It is conceivable

that the person who placed the garbage bags on the lawn had access to the footlocker. He may have prepared the packages of heroin which Santana-Ortiz and Herrera picked up later that day.

The nexus between Herrera and the footlocker is slight if existent at all. The only certain link between Herrera and the footlockers is that the footlocker was in the house when Herrera picked up the heroin. The footlocker was found in the laundry room. It could only be seen from inside the laundry room. The presumption that Herrera's heroin was taken from the heroin in the footlocker is weakened by the fact that the heroin seized from Herrera was more pure than that found in the footlocker. The purity of the heroin seized from Herrera was 2.7. The purity level of the heroin in the footlocker was 1.5.

It does not appear from these facts that the court could reasonably find that Herrera had the ability to exercise dominion and control over the footlocker beyond a reasonable doubt. We therefore reverse for insufficiency of evidence.

## VI. Abuse of Discretion in Imposing Sentence

■ Finally, Herrera contends that ten years imprisonment with a special parole term of 25 years on conviction of the conspiracy charge is excessive. Santana-Ortiz received two concurrent terms of six years incarceration and five years probation. Herrera concedes that the trial court has "broad discretion, within the statutory limits, in imposing sentence...." *United States v. Cardi,* 519 F.2d 309, 315 (7th Cir.1976). He also acknowledges that "a mere showing of disparity of sentences among co-defendants does not constitute an abuse of discretion." *Id.* at 315–16.

As pointed out in the Government's brief, the trial court was apprised of many facts before it sentenced Herrera. Santana-Ortiz's post-arrest statement implicated Herrera as the main conspirator. At the time of his arrest in March, 1984, Herrera was out on bond on a state narcotics charge, although it was eventually dropped. Also in

1974 Herrera was arrested on narcotics charges. He fled to Mexico and forfeited the bond.

The statute which Herrera violated permits a sentence of 15 years. 21 U.S.C. § 841(b). Imposing a sentence of 10 years, in light of Herrera's past charges of narcotics trafficking, cannot be deemed an abuse of the court's discretion.

### Conclusion

The convictions on Counts One and Two are affirmed, and the conviction on Count Four is reversed. We remand to the district court for such modification of sentence, if any, as the district court determines appropriate.