## 20074

The STATE, Respondent, v. William David McCLINTON, Appellant.

(217 S. E. (2d) 584)

*Messrs. Matthew J. Perry* and *Robert L. Hallman, Jr.,* of Columbia, *for Appellant,* cite:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Brian P. Gibbes, Asst Atty. Gen.,* of Columbia, and *William T. Jones, Sol.,* of Greenwood, *for Respondent,* cite: █

August 5, 1975.

Bussey, Justice:

Defendant appeals his conviction upon a jury trial, of assault with intent to ravish. The circuit court entered judgment and sentenced the defendant to 20 years. S. C. C. A. 16-72 (1974 Supp.).

The principal question is whether the circuit court should have granted defendant's motion for a directed verdict of acquittal. It is well settled that on appeal from a refusal to direct a verdict of not guilty, the evidence and inferences that may reasonably be drawn therefrom have to be viewed in the light most favorable to the State, and if there is any competent evidence supporting the verdict, such will not be set aside. See cases collected in West's South Carolina Digest, Criminal Law, Key numbers 1144(13) and 1159.

The burden was upon the State to present competent evidence to prove that (1) the prosecutrix had been assaulted, (2) that the assailant had the intent to rape, *e. g. State v. Tuckness,* 257 S. C. 295, 185 S. E. (2d) 607 (1971), and, of course, (3) that the defendant was the assailant.

The State's proof clearly established the *corpus delicti*. The prosecutrix an Erskine College student, was walking across the campus at 9 :00 p. m., April 5, 1974. As she walked she heard someone approaching down a hill adjoining the sidewalk. That individual soon emerged from the darkness into an area lighted by a street lamp; the prosecutrix was able to discern that the individual was a lone black male wearing a dark shirt. The prosecutrix continued walking until she realized that the black male was beginning to overtake her. The prosecutrix then made efforts to escape by running and screaming. Her efforts notwithstanding, the assailant was successful in catching, grabbing, and dragging her into some adjoining underbrush. In the underbrush she struggled to release herself. She managed to scream, to kick her attacker, and *to bite her assailant's hand*. The assailant fled when a fellow student heard the screams and approached the area of the assault.

The more difficult question is whether the State's proof adequately established identity. Neither the prosecutrix nor her rescuer were able . to identify defendant as the assailant. However, the arresting officers testified: (1) the defendant was wearing pants similar to those attributed to the assailant by the prosecutrix; (2) that the defendant was arrested in the vicinity of the crime; and (3) to the effect that defendant's right hand had been recently bitten.

An officer of SLED gave this testimony which was typical of the officer's description of the hand injury.

"Q. All right, sir. Did you, along with the Chief, Mr. Pearson, or any others, or Sheriff of this County, make an examination of the defendant's hands?

"A. Yes, sir.

"Q. What did you find, Mr. Clark?

"A. On his right-hand between the first joint and second joint of the index finger there was a cut that appeared to have been bleeding some.

"Appeared to have been bleeding some?

"A. Yes, sir.

"Q. To have been, but was not when you saw it, is that what you are telling us?

"A. Yes, sir.

Mr. Perry: He didn't say that, Your Honor.

The Court: Don't lead him, Mr. Solicitor. Tell us how it looked.

"Q. Tell us again. It appeared to have been bleeding?

"A. Yes, sir, that's what I said.

"Q. Let me ask you this question. Was it then bleeding when you saw it?

"A. No, sir.

"Q. All right, sir. Now go ahead and give us a description of what you saw.

"A. On the back part of his right hand here there were several little indentions and—

Mr. Perry: Your Honor, I again object to the use of that term.

The Court: All right, sir, I overrule the objection.

"Q. All right.

"A. They were in a semi-circle or half moon shape. The indentions were about a quarter of an inch long, kind of entrenched, and between the indentions there seemed to be a broken place; it wasn't quite as deep as the quarter of an inch indention and these broken lines like—

"Q. About how many of them were there? Those—

"A. I didn't count them, but there were several, six or eight, that you could—that you could see, broken line here.

On the inside of his right hand there was another semicircle of the same or similar type indentions, with the indentions they were—I don't know, say the depth, except, of a fingernail, and it was broken and then another one, then another one, then another one."

We think these facts were adequate to support a finding of identity by the jury.

Defendant's second question is whether the officers' descriptions of the hand injury should have been stricken because they were conclusions and opinions. Strictly speaking we do not regard the officers' descriptions of what they saw and observed to be either conclusions or opinions. More often than not the appearance of any object cannot be accurately described by a witness to a jury without likening such to something else that the jury is familiar with. In 32 C. J. S. Evidence § 546(9), p. 121, we find the general rule stated as follows:

"A witness may state his impression or inference with respect to the appearance of a person, animal, object, or place if he had had adequate opportunity for observation, the details of such appearance cannot be reproduced before the jury to enable them to draw a correct inference, and he states as much as possible of the constituent facts."

The testimony of the officers describing the appearance of the defendant's hand was, we think, clearly admissible in accord with the foregoing rule.

But even if we regard any portion of such testimony to be the conclusions or opinions of the witnesses, the evidence was still admissible under the weight of modern authority. See *McCormick,* Evidence, Section 11-12 ([2d] ed. 1972). Both *McCormick and Wigmore*[1] reason that conclusions or opinions of laymen should be re-

---

[1] Wigmore, Evidence, Section 1918. ([3rd] ed. 1940).

jected only when they are superfluous in the sense that they will be of no value to the jury. We do not think that the descriptions of the injury as a "cut, as though it had been bitten;" "a mark was—similar to a tooth;" or a "mark that looked kind of like a round half moon" were superfluous and therefore these, even if they be "conclusions",[2] were properly admissible.

Judgment affirmed.

Moss, C. J., and LEWIS, LITTLEJOHN and NESS, JJ., concur.

---

[2] See McCormick, Evidence, Section 11 ([2d] 1972) for a discussion of whether these remarks really are conclusions.