**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Henry Louis GRIFFIN,
Defendant-Appellant.**

**No. 85–2766.**

United States Court of Appeals,
Seventh Circuit.

Argued May 6, 1986.

Decided Aug. 10, 1987.

Rehearing Denied Nov. 9, 1987.

Joseph W. Ruppert, J.A. Crowell & Assoc., Ft. Wayne, Ind., for defendant-appellant.

Bruce D. Brattain, U.S. Atty's Office, Hammond, Ind., for plaintiff-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

The defendant, Henry Griffin, appeals his conviction of the following: (1) one count of conspiring to knowingly and intentionally possess with intent to distribute, and the distribution of a Schedule II Controlled Substance in violation of 21 U.S.C. § 846; (2) one count of knowingly and intentionally distributing phencyclidine in violation of 21 U.S.C. § 841(a)(1); (3) one count of knowingly and intentionally possessing phencyclidine in violation of 21 U.S.C. § 841; and (4) one count of knowingly and intentionally possessing piperidinocyclohexanecarbonitrile with intent to manufacture phencyclidine in violation of 21 U.S.C. § 841(a)(1). Griffin also appeals the district court's imposition of consecutive eight-year sentences (32 years total) on Griffin's convictions on four of the counts set forth in the indictment. We affirm.

## I.

### FACTS

On June 3, 1985 at approximately 2:30 p.m., Officer Albert Taylor of the Chicago Police Department, while acting as an undercover narcotics agent, met with the appellant's co-defendant, Clyde Harden, at a Jewell Bazaar parking lot in Chicago, Illinois. Ten Government agents had Officer Taylor and Harden under surveillance as they discussed the proposed purchase of a quantity of phencyclidine (PCP), and during their trip to Gary, Indiana for delivery of the same. The Government agents followed and maintained their surveillance of Officer Taylor and Harden to their point of destination in Gary.

Officer Taylor and Harden initially stopped at a house located at 5311 East 13th Avenue in Gary, Indiana. Harden went to the door of the house and returned, informing Officer Taylor that no one was in the residence at that time. The two men then drove to an apartment complex in Gary in another unsuccessful attempt to locate the individual whom Harden expected to be present at the 13th Avenue address. The two men returned to the house on 13th Avenue and parked across the street from the residence. Harden entered the house and returned a few moments later, informing Officer Taylor that Harden's "brother" (Henry Griffin) was unwilling to "front" the PCP without first "seeing the money." Taylor then told Harden he would return with the money in one week. Harden re-entered the house and returned to inform Officer Taylor that his brother would "front" one gallon of PCP until Harden and Taylor returned to Chicago, at which time Taylor would have to pay the $10,000 for the first gallon before they returned for the other quantity of PCP Taylor had expressed an interest in purchasing.

While Harden was discussing the transaction with Officer Taylor, Henry Griffin departed in a blue Volkswagen that had been parked in the driveway on the premises. Griffin returned approximately ten minutes later and Harden asked Griffin for the PCP. Harden testified that Griffin gave him a plastic bag containing two jars of PCP at which time Officer Taylor observed Harden and Griffin on the front porch of the residence with Harden carrying the two jars of PCP. Officer Taylor examined the bottles to ascertain whether the substance was in fact PCP, and upon examination he was satisfied that it was PCP and placed the bottles in the trunk of his car.

Harden and Taylor delivered the PCP to Chicago and further discussed the possibility of securing more PCP for Taylor. Harden testified that he told Officer Taylor that "if everything worked out fine that I'd see if I could get him some more." Upon his arrival at the Jewell Bazaar parking lot in Chicago, Harden was arrested.

Later that same day, June 3, 1985, a United States Magistrate issued a search warrant authorizing a search of the 5311

East 13th Avenue residence in Gary, Indiana. The warrant stated:

"Affidavit [ ] having been made before me by the below-named affiant that he/she has reason to believe that [ ] (*on the premises known as*) one red, one story framed house with white trim at the address 5311 East 13th Avenue, Gary, Indiana, with a detached garage, red with white trim in the Northern District of Indiana there is now being concealed certain property, namely PCP, chemical intermediates and chemical ingredients used in the manufacture of PCP (Phencyclidine), chemical equipment, notes and formulas, and identification and other evidence of possession and manufacture of PCP, in violation of 21 USC 841(a)(1), and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person *or premises above-described* and the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)."

(Emphasis added). On the evening of June 3, 1985, the officers and federal agents involved in the undercover operation returned to the 5311 East 13th Avenue premises in Gary to execute the search warrant. The officers were admitted into the residence after announcing their purpose, and proceeded to search the residence and the premises, and the surrounding area, including the yard, the detached garage, a toolshed, and the blue Volkswagen parked at the house. The search of the residence and premises recovered numerous chemicals, bottles containing controlled substances, as well as money.[1] Henry Griffin was arrested after the premises had been searched. Griffin was indicted and charged with conspiracy to possess with intent to distribute a Schedule II Controlled Substance, distributing phencyclidine, possession of phencyclidine, and possession of piperidionocyclohexanecarbonitrile with intent to manufacture phencylidine and with the manufacture of PCP. Griffin was subsequently tried and the jury returned a verdict convicting him on all charges set forth in the indictment except the charge of manufacturing PCP.

Defendant Griffin argues for reversal of his conviction on two grounds: (1) the trial court erred in refusing to suppress evidence secured as a result of an impermissibly broad search, and (2) the Government did not present evidence sufficient to sustain the conviction. Griffin also argues that the district court's imposition of consecutive eight-year sentences (32 years total) on his convictions on four of the counts set forth in the indictment was excessive.

## II.

### *IMPROPER SEARCH*

Defendant argues that the evidence seized at the Gary residence should have been suppressed because the Government agent failed to establish the existence of probable cause for the issuance of the search warrant, and because the search

---

1. All items seized were inventoried by the DEA. The items seized and their location are as follows:

 a. One can cyclohexanana, magnesium metal turings, one red funnel, one bottle of amber fluid, two white containers with unknown substance, two clear bottles containing a tan powder substance, all recovered in the detached garage.

 b. One brown bottle containing amber liquid recovered buried in the yard on west side of garage by S/A McCreary.

 c. Small baby bottle containing $510.00 U.S. [currency] found in the southwest corner of the back yard buried in the ground.

 d. One 7 ounce Miller beer bottle containing an unknown liquid found in the west side of the back yard buried in the ground by S/A Woolley.

 e. One bottle of bromobenzene, one bottle of hydrochloric acid, one bottle of iodine crystals, one strainer, one measuring cup, three containers of lye, and a roll of paper towels found by S/A McCreary in the rear yard immediately west of 5311 East 13th Avenue.

 f. $220.00 in U.S.C. recovered by S/A Stansberry from a briefcase in the trunk of a blue Volkswagon in the driveway (Ind. Plate No. 45G4795).

 g. One 30/30 calibre marlin lever action rifle (ser. # 24091298) found by Officer Keller in the utility room off of the hallway.

 h. One brown gallon bottle (gallon) containing amber liquid found by S/A McCreary in a tool shed.

 i. Rent receipt for Henry Griffin found by S/A Woolley in the living room.

improperly exceeded the scope of the search warrant.

In reviewing a magistrate's issuance of a search warrant based on probable cause, the magistrate's decision will be upheld "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing...." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). The probable cause determination "involves the application of law rather than an evaluation of factual evidence, [therefore] on review the appellate court is not limited to a determination of whether the district court's finding was clearly erroneous. It [appellate court] must independently review the sufficiency of the affidavit, *United States v. Minis,* 666 F.2d 134 (5th Cir.1982), recognizing that doubtful cases should be resolved in favor of upholding the warrant." *United States v. Rambis,* 686 F.2d 620, 622 (7th Cir.1982) (citing *United States v. Allen,* 588 F.2d 1100 (5th Cir.), reh. denied 593 F.2d 709, *cert. denied sub nom. Perkins v. United States,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979)).

This court has stated that:

"[A] magistrate's determination of probable cause is to be 'given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.' "

*United States v. Pritchard,* 745 F.2d 1112, 1120 (7th Cir.1984) (quoting *United States v. Rambis,* 686 F.2d 620, 622 (7th Cir. 1982)).

■ In evaluating whether the supporting affidavit was sufficiently reliable to support a determination of probable cause, a "totality of the circumstances" approach is taken. *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330. Under this approach, "a balanced assessment of the relative weights of all the various indicia of reliability" including the affiant's veracity and the basis of his knowledge set forth in the affidavit are to be considered. *Id.*

"The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Id.* at 238, 103 S.Ct. at 2332.

In support of his argument alleging insufficient probable cause for the issuance, the defendant argues that since the same requisite indicia of reliability are not present, the totality of circumstances test is not satisfied. Specifically, Griffin argues that the affiant, DEA investigator Lance Mrock, failed to adequately set forth the drug investigation experience of Officer Taylor and/or DEA Special Agent Kenneth McCreary when testifying before the issuing search warrant magistrate, thus the record fails to establish the reliability of the statements on which Agent Mrock based his affidavit. The defendant also argues, in a legal manuever best classified as an attempt to nitpick the record, that Mrock's failure to allege specific dates, times or places underlying Taylor's and McCreary's assertions that PCP was being manufactured at the 5311 location renders the affidavit unreliable and stale as the activity recited in the affidavit could have occurred long before the affiant made his statement and thus any probable cause that existed had lapsed.

■ Defendant's contention that the affidavit lacks the requisite indicia of reliability because the affidavit is based in part on facts and information related by law enforcement officers whose level of expertise is not set forth in the affidavit and thus unknown, is without merit. However, the Supreme Court has determined that "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number," *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684

(1965), and this court has also expressly acknowledged that "affiant's fellow agents, who plainly could be regarded as a reliable source by the magistrate." *United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir.1984). Clearly, officers of the United States assigned to such dangerous and complex work as drug enforcement are not put in the field without initially undergoing proper and extensive training. Accordingly, the statements of law enforcement officials such as Officer Taylor (five years as undercover detective with Chicago Police Department) and Agent McCreary (two years with the DEA), who were involved in a joint investigation with the affiant Special Agent Mrock provided a reliable basis for issuance of the search warrant under the decisions of the United States Supreme Court and this court.

■ Defendant also maintains that because of the absence of the dates and times concerning the officers' observations referred to in the affidavit, the evidence upon which the probable cause determination was based was stale as the observations could have occurred so long before the affidavit was made that there was no longer any reason to believe the activities recited were presently occurring at the time the search warrant issued and therefore the evidence was insufficient to support a finding of probable cause. The affidavit states at the outset the initial drug (PCP) negotiations between Officer Taylor and Harden took place on June 3, 1985. The observations of the law enforcement officers regarding the Harden/Taylor transactions at the Gary residence which occurred shortly after the initial negotiations are also set forth in the affidavit. The only other reference to time is that Harden and Officer Taylor returned to Chicago whereupon Harden was arrested at "4:45 p.m." A reasonable and logical inference from the events set forth in the affidavit is that they all occurred on the date stated thereon, June 3, 1985, as the facts speak to occurrences which obviously occurred before, during and after the transfer of liquid PCP from Harden to Officer Taylor at the Gary residence. Given that the warrant was issued June 3, 1985 at 9:40 p.m., and the search and seizure of the Gary residence was accomplished within the time prescribed on the face of the warrant, ("on or before June 4, 1985"), defendant's claim that probable cause was not established in the affidavit because the activity recited therein was not dated is not supported in the record.

■ Under the totality of the circumstances test set forth in *Gates* requiring the magistrate to make a "common sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place," *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, Agent Mrock's affidavit provided the required "substantial basis" for concluding that probable cause existed. The information contained in the affidavit was sufficient to support the conclusion that drug paraphenalia would in all probability be found on the Gary premises. The affidavit further states that after the negotiation for the PCP between Officer Taylor and Harden, Harden brought Office Taylor to the Gary residence, and Harden after exiting the house, returned and stated to Officer Taylor "I can smell it, they're cooking it in there" (referring to the preparation of the PCP). The affidavit also recites that Harden entered the Gary house to see if his "brother" would front three to four gallons of liquid PCP to Officer Taylor, and that after negotiating with his brother, Harden brought out two half gallon jars of amber liquid, stating that his "brother" would front the gallon, but that Taylor and Harden were to return to the residence later with $10,000 at which time Harden's "brother" would sell another two gallons for an additional $20,000. The affidavit further sets forth that Harden told Officer Taylor his "brother" had an additional half gallon that he was holding for sale to someone else for $7,500. Further on, in the affidavit, it is asserted that later, on the day of Harden's arrest, Harden advised Agent McCreary that two half gallons of liquid PCP remained at the Gary residence. Further, Agent McCreary, based upon his experience and knowledge gained from dealing with liquid PCP, determined after the seizure that the jars transferred to Officer Taylor from Harden did contain

liquid PCP. Finally, the affiant Lance Mrock stated in the affidavit that he has been a Special Agent of the Drug Enforcement Administration for 15 years and has specialized in investigations of clandestine illegal drug laboratories for some ten years. Based on his experience, Agent Mrock asserted that a particular odor is associated with the manufacture of PCP and that Harden's statement that he could smell them cooking "it" in there meant just what it said that the manufacture and preparation of PCP was presently taking place in the Gary residence.

It is evident from the facts set forth in the affidavit including the officers' past drug enforcement experience, that a magistrate could only logically conclude that the items sought to be seized, namely "PCP, chemical intermediates and chemical ingredients used in the manufacture of PCP (Phencyclidine), chemical equipment, notes and formulas, and identification and other evidence of possession and manufacture of PCP, in violation of 21 U.S.C. § 841(a)(1)," [2] were associated with the crime of possession, manufacture and distribution of a Schedule II Controlled Substance, and were located on the premises stated, namely the Gary residence and surrounding area at 5311 East 13th Avenue, in accordance with *Rambis*, 686 F.2d at 622.

Accordingly, we conclude that the magistrate's issuance of the search warrant was proper. The supporting affidavit alleges facts more than sufficient to allow a magistrate to reasonably conclude that the items sought to be seized were associated with the illegal possession and manufacture of PCP and were located on the premises at the Gary address. Moreover, we are convinced that the supporting affidavit does possess the requisite indicia of reliability to support a determination of probable cause

as set forth in *Gates* since it was based, in part, on statements of other law enforcement agents, a reliable source under the decisions of the United States Supreme Court.

Defendant's second line of attack regarding the search warrant is that the evidence obtained pursuant to the warrant should be suppressed since the evidence was the fruit of a search which improperly exceeded the scope of the warrant. The search warrant stated:

"Affidavit [ ] having been made before me by the below-named affiant that he/she has reason to believe that [ ] (*on the premises known as*) one red, one story framed house with white trim at the address 5311 East 13th Avenue, Gary, Indiana, with a detached garage, red with white trim in the Northern District of Indiana there is now being concealed certain property, namely PCP, chemical intermediates and chemical ingredients used in the manufacture of PCP (Phencyclidine), chemical intermediates and chemical ingredients used in the manufacture of PCP (Phencyclidine), chemical equipment, notes and formulas, and identification and other evidence of possession and manufacture of PCP, in violation of 21 USC 841(a)(1), and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or *premises above-described* and the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)."

(Emphasis added). The Government searched the house and garage and also seized items from soil and rock in the back yard, a toolshed and an automobile in the driveway.[3] It is the defendant's claim that the affidavit indicates that the contraband

---

**2.** Affiant Lance Mrock's description of the property to be seized as it appeared on the Search Warrant on Written Affidavit.

**3.** Although the search of the automobile in the driveway at 5311 East 13th Avenue is problematic, the evidence obtained from the car, $220.00, was not introduced in evidence against Griffin and therefore we need not address the constitutionality of the search of the car. We note that while this court has stated that it

"agree[s] with other courts that have addressed this issue and hold that a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises."
*United States v. Percival*, 756 F.2d 600, 612 (7th Cir.1985), we have also explained that "the better practice would be to include a description of the occupant's vehicle in the warrant when the warrant is intended to extend to the car." *Id.*

to be seized was believed to be inside the Gary residence itself, and the search warrant was issued permitting the search of only the residence and the garage; therefore the defendant argues that no probable cause existed to search the yard, toolshed or automobile, and the evidence extracted from other than the residence and garage is impermissible in a court of law because it was obtained in a search which exceeded the scope of the warrant.

Regarding the lawful scope of a search "[t]he Supreme Court held in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), that a lawful search of fixed premises generally extends to every part of the premises in which the object of the search may be found, notwithstanding the fact that separate acts of opening or entry may be required to complete the search." *United States v. Percival,* 756 F.2d 600, 612 (7th Cir.1985) (citing *Ross,* 456 U.S. at 820–21, 102 S.Ct. at 2170–71). Applying *Ross,* a lawful search of the Gary residence would extend to every part of the premises as specifically related in the language of the search warrant in which the object of the search (the PCP materials) "may be found."

In determining whether the law enforcement officials exceeded the scope of the search warrant under *Ross,* it is helpful to analyze how prior caselaw has construed the warrant language "on the premises known as" followed by a physical description of a residence and the address of that residence. In *United States v. Palmisano,* 386 F.Supp. 599 (E.D.Wis.1974), the warrant at issue authorized the search of "[t]he premises known as 346 North Broadway, Milwaukee, Wisconsin, this being a single story brick structure, housing a front tavern area which contains a bar, pool table, and related equipment, and a back room immediately adjacent to the tavern area." The *Palmisano* court held that "a *search of the entire premises at 346 North Broadway* was authorized and was

not to be limited to the front and back rooms; *specific reference* to those areas in the search warrant ... was *for the purpose of more fully identifying the premises* and was not *intended to reduce the area to be searched." Id.* at 599–600 (emphasis added). *See also United States v. Bulgatz,* 693 F.2d 728 (8th Cir.1982); *United States v. Freeman,* 685 F.2d 942, 955 (5th Cir.1982); *United States v. Napoli,* 530 F.2d 1198, 1200 (5th Cir.1976); *United States v. Anderson,* 485 F.2d 239 (5th Cir. 1973); *United States v. Long,* 449 F.2d 288 (8th Cir.1971); *United States v. Pointer,* 348 F.Supp. 600 (W.D.Mo.1972).

The warrant at issue stated:

"Affidavit [ ] having been made before me by the below-named affiant that he/she has reason to believe that [ ] (*on the premises known as*) one red, one story framed house with white trim at the address 5311 East 13th Avenue, Gary, Indiana, with a detached garage, red with white trim in the Northern District of Indiana there is now being concealed certain property, namely PCP, chemical intermediates and chemical ingredients used in the manufacture of PCP (Phencyclidine), chemical equipment, notes and formulas, and identification and other evidence of possession and manufacture of PCP, in violation of 21 USC 841(a)(1), and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or *premises above-described* and the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)."

(Emphasis added). The warrant expressly authorizes a search of "the premises." According to *Black's Law Dictionary,* (5th ed. 1979), premises means "[l]ands and tenements; an estate including land and buildings thereon." *Id.* at 1062–63. *See also The American Heritage Dictionary* 978 (2d ed. 1982) (premises: "Land and the

Thus, to avoid dispute over whether a search of a vehicle on the premises exceeds the scope of the warrant, the vehicle's description as a place to be searched should be included in the warrant itself. *See also United States v. Freeman,* 685 F.2d 942, 955 (5th Cir.1982) (warrant for

search of premises justifies search of jeep parked on premises); *United States v. Napoli,* 530 F.2d 1198, 1200 (5th Cir.1976) (warrant for search of house justifies search of camper parked in driveway), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).

buildings upon it"). Under the *Palmisano* line of reasoning, the specific mention of the "house" and the "garage" does not limit the scope of the search to those specific areas, but instead makes the premises to be searched more readily identifiable. Whether the search exceeded the scope of the warrant is, as per *Ross,* measured by whether PCP materials were likely to have been found in the toolshed, in the car parked in the driveway, and in the yard generally, both above and below the ground.

We hold that the search did not exceed the scope of the warrant because it is reasonable to conclude that the object of the search, "PCP, chemical intermediates and chemical ingredients used in the manufacture of PCP (Phencyclidine), chemical equipment, notes and formulas, and identification and other evidence of possession and manufacture of PCP ...", may have been found in the toolshed or yard. In as highly secretive and illegal operation as the manufacture of PCP, it was entirely reasonable to suspect that drugs may be buried or hidden on the premises since the chemicals, tools, and drugs involved in the manufacture of PCP would not all be stored in *one* particular place. As DEA Agent James Woolley testified at trial:

A. [Woolley] Well, it's not uncommon that that happens that people would to maintain security would bury part of their products, and we just took a shot at it, and once we found the first thing, then we conducted a more extensive search and found the other items.

Q. Were there patches of bare ground in the backyard that would sort of guide you as to where to dig?

A. Yes.

Q. And you've gone through this scenario before haven't you? I mean, you're familiar with digging in backyards trying to find drugs, is that a fair statement?

A. Yes.

4. 21 U.S.C. § 841(a)(1) reads as follows:
"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

The warrant authorizes a search of *"the premises* known as one red, one story framed house with white trim at 5311 East 13th Avenue, Gary, Indiana, with a detached garage, red with white trim" clearly included "the land *and* the buildings thereof," *Black's, supra.* Griffin does not argue that the toolshed was not located on the "premises known as ... 5311 East 13th Avenue, Gary, Indiana...." Had the warrant expressly limited the search to "the bedroom closet or a green painted cabinet located on the premises known as 5311 East 13th Avenue" specifically limited to "the attic at the premises known as 5311 East 13th Avenue," Griffin's argument might conceivably have merit. But just as the search warrant in *Palmisano* which described the building to be searched in detail was not limited to the "front and back rooms" by its recitation of particular details, the search Griffin challenges based on a warrant that did not describe the property to be searched with the same amount of detail as the warrant in *Palmisano*—was not limited by the absence of a specific reference in the warrant to each and every building on the "premises" and the location of each spot the Government agents dug up. Although the better practice would be to specify clearly in the warrant whether the entire premises or only some building on or portions of the premises are subject to search, in the present case the search was within the reasonable scope of the warrant. We therefore hold that the trial court did not commit error in admitting into evidence the objects seized on the premises outside the specific buildings recited in the search warrant at the Gary residence. *United States v. Percival,* 756 F.2d 600 (7th Cir.1985).

### III.

### *SUFFICIENCY OF EVIDENCE*

■ Defendant argues that the evidence presented was insufficient to sustain his conviction under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.[4] In evaluating the defend-

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance:"
21 U.S.C. § 846 reads as follows:

ant's sufficiency of the evidence challenge the appellate court "must review all the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to the government." *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984). *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). "The test is whether, after viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Pritchard,* 745 F.2d at 1122 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Specifically, in a conspiracy/narcotics case this court has stated that:

"This court has, on numerous occasions, had the opportunity to review convictions for violation of 21 U.S.C. §§ 841(a)(1), 846. As we have previously stated, and again reiterate, when reviewing the sufficiency of evidence to establish a conspiracy to possess with intent to distribute narcotics, we will affirm the trial court unless the evidence, viewed in light most favorable to the Government, could not have persuaded any rational trier of fact of defendant's guilt beyond a reasonable doubt."

*United States v. Mayo,* 721 F.2d 1084, 1087 (7th Cir.1983). *See also United States v. Fleming,* 677 F.2d 602, 609 (7th Cir.1982); *United States v. Garza-Hernandez,* 623 F.2d 496, 501 (7th Cir.1980); *United States v. Washington,* 586 F.2d 1147, 1152 (7th Cir.1978); *United States v. Page,* 580 F.2d 916, 919 (7th Cir.1978); *United States v. Garcia,* 562 F.2d 411, 414 (7th Cir.1977).

The defendant Griffin maintains that there was insufficient evidence to support the conviction under § 841(a)(1) or § 846 because "the only evidence connecting defendant-appellant to this crime, if the conflicting testimony of the police is accepted, is his appearance on the porch of the residence in question with Clyde Harden at the time the PCP was taken to the trunk of

Harden's car ... the only direct evidence, as scant as it was, linking appellant to this crime, came from Clyde Harden, who received a lenient plea bargain in exchange for a guilty plea and his testimony."[5]

"A conspiracy is a 'combination or confederation between two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.'" *United States v. Herrera,* 757 F.2d 144, 149 (7th Cir.1985) (quoting *United States v. Mayo,* 721 F.2d 1084, 1088 (7th Cir.1983)). Thus, the "essential elements of conspiracy under section 846 are the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substance Act." *United States v. Sweeney,* 688 F.2d 1131, 1140 (7th Cir.1982). Moreover, it is perfectly legitimate to prove a conspiracy by circumstantial evidence. *Herrera,* 757 F.2d at 149. *See United States v. Redwine,* 715 F.2d 315, 320–21 (7th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). A conspiracy "'is conceived and carried out clandestinely, and direct evidence of the crime is rarely available. Thus, circumstantial evidence from which the jury could reasonably infer the existence of an agreement is permissible.'" *United States v. Mayo,* 721 F.2d 1084, 1088 (7th Cir.1983) (quoting *United States v. Washington,* 586 F.2d 1147, 1153 (7th Cir. 1978)). In *United States v. Marquardt,* 786 F.2d 771, 780 (7th Cir.1986), this court stated that "'circumstantial evidence is of equal probative value to direct evidence.'" (quoting *United States v. Towers,* 775 F.2d 184, 188 (7th Cir.1985)). With regard to the quantum of evidence, a "single act is enough evidence if the circumstances *permit the inference* that the act was 'intended to advance the ends of the conspiracy.'" *United States v. Silva,* 781 F.2d 106, 109 (7th Cir.1986) (quoting *United States v. Xheka,* 704 F.2d 974, 989 (7th Cir.1983)) (Emphasis added).

---

"Attempt and conspiracy. Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

5. Brief of Defendant-Appellant, p. 17.

Under a combination §§ 841(a)(1), 846 prosecution the Government must prove that defendant Griffin knew of the conspiracy to distribute drugs and that he intended to join and associate himself with its criminal design and purpose. *United States v. Perry,* 747 F.2d 1165, 1168–69 (7th Cir.1984); *United States v. Herrera,* 757 F.2d 144, 149 (7th Cir.1985). The evidence offered at trial connecting Griffin with the conspiracy to distribute the PCP under § 846 and the possession, distribution and manufacture offenses under § 841(a)(1) included testimony from Officer Taylor, co-conspirator Clyde Harden, Special Agent Woolley of the Drug Enforcement Administration, and from a forensic chemist, John Meyers. Officer Taylor testified that Griffin emerged from the Gary residence, entered a Volkswagen parked on the premises and left after Harden told Office Taylor that his "brother" had to pick up the PCP before the deal could be consummated.[6] Officer Taylor further testified that approximately five to ten minutes later, Griffin returned to the residence driving the car to the rear of the house. Griffin then came out on the porch with Clyde Harden, and Harden brought out the two bottles containing the PCP and delivered them to Officer Taylor for his inspection.[7]

Clyde Harden testified that Griffin told him the PCP would cost the purchaser ten thousand dollars ($10,000), and that in response to Griffin's inquiry about how the money would be paid, Harden told Griffin that he would bring it "back."[8] Additional evidence linking Griffin to the conspiracy and narcotics charges included Special Agent Woolley's testimony that fingerprints identified as being Griffin's were found on a glass jar containing yellow powder (containing PCP) found during the search of the garage pursuant to the search warrant,[9] and his testimony that his extensive experience with the manufacture of PCP led him to believe that PCP was being manufactured in the Gary residence.[10] Additionally, a forensic chemist,

John Meyers, testified as to the existence and quantity of PCP and other related chemicals which were confiscated from the Gary residence. Also of importance is the testimony that the odor distinct to the manufacture of PCP was detected at the Gary residence.[11]

We hold that the evidence presented at trial was sufficient to sustain Griffin's convictions involving and the distribution, possession with intent to distribute, and possession with intent to manufacture a controlled substance under § 846, and the distribution, possession with intent to distribute, and possession with intent to manufacture a controlled substance under § 841(a)(1). The evidence demonstrated that Griffin was present when the drug transaction took place, that he participated in the negotiation of the sale price of the PCP, and that his fingerprints were found on one of the jars involved in the manufacture of the PCP. After reviewing this evidence in a light most favorable to the Government, we refuse to say that no rational trier of fact could have found the essential elements of the conspiracy to distribute a controlled substance under § 846, crime beyond a reasonable doubt. *Pritchard,* 745 F.2d at 1122.

## IV.

### *EXCESSIVE SENTENCE*

■ Defendant Griffin's final contention is that the sentence imposed on him was clearly excessive and was an abuse of the trial court's discretion. Griffin was sentenced to consecutive sentences of eight years on each count pursuant to the convictions on Counts I, IV, VII and VIII. In addition, it was ordered that Griffin serve a Special Parole term of three years on Count IV and that he pay an aggregate mandatory penalty assessment of two hundred dollars ($200.00) pursuant to 18 U.S.C. Section 3013. Meanwhile, Griffin's co-conspirator, Clyde Harden, received a seven-

6. See Trial Transcript, vol. II, p. 11.

7. Transcript, vol. II, pp. 80, 103.

8. Transcript, vol. II, pp. 32–34.

9. Transcript, vol. II, pp. 80, 103.

10. Transcript, vol. II, p. 86.

11. Transcript, vol. II, p. 12.

year sentence with a Special Parole of three years, and a mandatory penalty assessment of fifty dollars ($50.00) after entering a guilty plea.

"This Court 'may not change or reduce a sentence imposed within the applicable statutory limits on the ground that the sentence was too severe unless the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence.'"[12] *United States v. Hoffman*, 806 F.2d 703, 713 (7th Cir.1986) (quoting *United States v. Fleming*, 671 F.2d 1002, 1003 (7th Cir.1982)). *Accord United States v. Ely*, 719 F.2d 902, 906 (7th Cir. 1983); *United States v. Schmidt*, 760 F.2d 828, 833 (7th Cir.1985).

The trial judge imposed consecutive eight-year sentences (32 years total) on Griffin's convictions on four counts set forth in the indictment. This sentence falls within the applicable statutory limit of fifteen years for each count. Since the sentence was within the statutory limit, Griffin must demonstrate that the trial court abused its discretion by relying on improper or unreliable information, failed to exercise any discretion at all, *Hoffman, supra,* or that the trial court plainly abused its discretion. *United States v. Cardi*, 519 F.2d 309 (7th Cir.1975). Griffin has presented no evidence, nor has our review of the record revealed any evidence, that the trial court abused its discretion when sentencing Griffin. Griffin's principal rationale for his assertion that the sentence is excessive is the fact that his co-conspirator, Clyde Harden, received a lesser sentence. A showing that a defendant received a heavier sentence than a co-defendant does not of itself support an abuse of discretion claim. *United States v. Santiago*, 582 F.2d 1128, 1137 (7th Cir.1978); *United States v. Melendez*, 355 F.2d 914 (7th Cir. 1966). Moreover, the fact that the sentence falls well within the statutory maximum militates against a finding that the trial court abused its discretion. *United States v. Madison*, 689 F.2d 1300, 1315 (7th Cir.1982).

Defendant Griffin cites no case law nor does he set forth any logical reasoning as to why we should hold that the trial court abused its discretion or relied on improper or unreliable information in formulating his sentence, and when asked at sentencing if he wished to make a statement in mitigation of his punishment, defendant Griffin declined.[13] Therefore, based on the record before us, we hold that the trial court did not abuse its discretion in imposing sentence upon Griffin.

## V.

### CONCLUSION

It is well known that we can make considerable progress toward eliminating one of the most serious problems of our generation by stifling the manufacture and distribution of drugs at its source. The Government has a substantial interest in controlling and wiping out the manufacture and sale of illegal drugs. During our lives, the manufacture, distribution, and use of illegal drugs has become a significant social problem placing an enormous law enforcement and manpower burden on our local communities as well as causing personal problems for many otherwise law-

---

**12.** Although not in effect at the time of Griffin's sentencing, the new standard of review for sentences provides that:

"Upon review of the record, the court of appeals shall determine whether the sentence—
(1) was imposed in violation of law;
(2) was imposed as a result of an incorrect application of the sentencing guidelines; or
(3) is outside the range of the applicable sentencing guideline, and is unreasonable, having regard for—
(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c)."

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous. 18 U.S.C. Sec. 3742(d) (effective November 1, 1986).

**13.** Transcript, vol. IV, p. 6.

abiding citizens and families. With these thoughts in mind, our courts are called upon to serve warning on persons such as the defendant, Henry Griffin, that those who propagate this serious national problem do so at considerable risk that they will be apprehended and called to account for their illegal activities. The jury's conviction of the defendant Henry Griffin of violating sec. 841(a)(1) and sec. 846 for conspiracy to distribute a controlled substance, and distribution, possession with intent to distribute, and possession with intent to manufacture a controlled substance and the trial court's sentence are affirmed.