**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Arkevus Jimon Cauthen, Appellant.

Appellate Case No. 2022-001268

———————

Appeal From Lancaster County
Brian M. Gibbons, Circuit Court Judge

———————

Opinion No. 6122
Heard June 11, 2025 – Filed September 17, 2025

———————

**AFFIRMED**

———————

Deputy Chief Attorney for Capital Appeals, David
Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General Joshua Abraham Edwards, all
of Columbia; and Solicitor Randy E. Newman, Jr., of
Lancaster, all for Respondent.

———————

**PER CURIAM:** Arkevus Jimon Cauthen appeals his convictions for murder, armed
robbery, and two counts of possession of a weapon during the commission of a
violent crime. On appeal, he argues the trial court erred in (1) failing to suppress
evidence officers dug up from a filled hole in his backyard while they were executing

a search warrant on his home, and (2) allowing witnesses to testify that bruising they observed on Cauthen's arm resembled a bite mark. We affirm.

**FACTS**

On May 24, 2016, Sandra Johnson was found dead in her home by her daughter. Johnson had been stabbed dozens of times. Officers quickly developed Cauthen as a suspect and obtained a warrant to search his home for "[a]ny kind of sharp object that may have been used to cause the stab wounds" along with other evidence connecting him to the crime. The search warrant described Cauthen's home as the premises to be searched and specified "[t]he search [wa]s to include all attics, basements, locked or unlocked containers, outbuildings, storage sheds, trash areas and trash containers, attached or unattached."

Officers executed the warrant on Cauthen's home the next day, which was the day after Johnson's body was discovered. While walking around the curtilage behind the residence, they found a recently-filled hole in the ground and a shovel leaning up against the wall of the home several feet away. Believing the hole could contain the murder weapon, officers moved some of the dirt to find a plastic bag containing a gun with an apparent blood stain on it. Later that night, John Duncan (Victim) was found murdered in his home. Officers discovered the gun found in Cauthen's yard had a serial number matching that of a gun missing from Victim's home. Additionally, DNA testing revealed the blood found on the gun belonged to Cauthen.

Ultimately, the State indicted Petitioner for Victim's murder, and additionally charged him with armed robbery and two counts of possession of a weapon during the commission of a violent crime.[1] Prior to his trial on these charges, Cauthen moved to suppress the evidence recovered from the hole in his yard and argued the State exceeded the scope of its search warrant when officers dug into the ground. He averred the warrant did not contain any language indicating officers could dig into his yard and that officers should have obtained a second warrant with such language before penetrating the ground. The State disagreed, arguing the hole was similar to an average "container" officers would have been permitted to search inside the home. The trial court denied the motion to suppress, finding the officers' search did not exceed the scope of the search warrant.

Cauthen also moved to suppress testimony about a "bite mark" officers observed on his arm at the time of his arrest. He explained the State had sought an odontologist to compare Victim's "bite" with the bruising observed on Cauthen's arm, and averred

---

[1] The State tried Petitioner separately for his charges related to Johnson's murder.

the potential prejudice from admitting the bite mark evidence exceeded its probative value. The State countered, noting it was not utilizing an expert to demonstrate the bruising was in fact a bite mark, but was instead asking the witnesses whether the bruising appeared to be a bite mark to them based on their lay opinions. The trial court reviewed photographs of the bruising and averred it had seen "many bite marks," and that the State's witnesses could testify that the bruising "appears to be a bite mark." However, the court indicated the defense could cross-examine the witnesses to have them clarify their observations were not "expert" opinions and also attack the weight and credibility of the evidence.

The gun that police found in the hole behind Cauthen's house was admitted as evidence during the trial. Additionally, several officers testified they observed bruising on Cauthen's arm which resembled a bite mark. The jury convicted Cauthen as indicted, and the trial court sentenced him to consecutive sentences of life imprisonment for murder, thirty years' imprisonment for armed robbery, and five years' imprisonment for each weapons charge. This appeal followed.

## STANDARD OF REVIEW

"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.*

## LAW/ANALYSIS

### A. Scope of Search Warrant

Cauthen argues the trial court abused its discretion in denying his motion to suppress the evidence recovered from the filled hole in the curtilage of his home because officers exceeded the scope of the search warrant by digging into the ground without explicit language in the warrant allowing them to do so. We respectfully disagree.

"Generally, the Fourth Amendment requires the police to have a warrant in order to conduct a search." *Robinson v. State*, 407 S.C. 169, 185, 754 S.E.2d 862, 870 (2014). "The general touchstone of reasonableness which governs Fourth Amendment analysis, . . . governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). "*Excessive* or *unnecessary* destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *Id.* (emphasis added). The area "immediately surrounding and associated with the home"—the curtilage—is "part of [the] home itself for Fourth Amendment

purposes." *Oliver v. United States*, 466 U.S. 170, 180 (1984). The curtilage of a home includes "outbuildings, [the] yard around [the] dwelling, [and the] garden." *State v. Wiggins*, 330 S.C. 538, 548 n.15, 500 S.E.2d 489, 494 n.15 (1998) (citing 40 Am. Jur. 2d *Homicide* § 168 (1968)). "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982). "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *Id.* at 821.

While the question of whether a search warrant authorizes officers to perform below-ground searches has never been explicitly addressed in South Carolina, other jurisdictions have found these areas are included within the scope of a search warrant. In *United States v. Griffin*, the Seventh Circuit found officers did not exceed the scope of a search warrant for a home when they also seized items "from soil and rock in the back yard." 827 F.2d 1108, 1113 (7th Cir. 1987). The court explained the reasonableness of such a search depended on whether the sought evidence could be found in relevant areas, such as "in the yard generally, both above and below the ground." *Id.* at 1114-15. Similarly, in *United States v. Gorman*, the Ninth Circuit found a search warrant for a residence also applied to its curtilage, noting that "a warrant authorizing a search of an area generally authorizes the search of all of that area's subareas even though they are not mentioned in the warrant itself." 104 F.3d 272, 275 (9th Cir. 1996). The court found officers did not exceed the scope of their search warrant when they searched "a large plastic translucent jar partly buried" in the curtilage of the home. *Id.* at 273-75.

In *Gebhardt v. State*, the Georgia Supreme Court found a warrant authorizing the search of the curtilage of the defendant's property also authorized a search of a sealed well within that area. 837 S.E.2d 318, 327-28 (Ga. 2019). It observed that although the warrant did not include the word "well," further specifying the area which officers were meant to search, the well in question "was contained on the land at the specified address." *Id.* 327-28. It added the warrant also allowed the officers to dig into the earth in that area, because "searching the well required a process of sifting through the ground on the property." *Id.* at 328.

We hold the trial court did not abuse its discretion in denying Cauthen's motion to suppress the recovered gun and DNA evidence because the search warrant in this case is best read as authorizing officers to search the home and its curtilage. *See*

*Pagan*, 369 S.C. at 208, 631 S.E.2d at 265 ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion."); *id.* ("An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."); *Robinson*, 407 S.C. at 185, 754 S.E.2d at 870 ("Generally, the Fourth Amendment requires the police to have a warrant in order to conduct a search."); *Oliver*, 466 U.S. at 180 (stating the area "immediately surrounding and associated with the home"—the curtilage—is "part of [the] home itself for Fourth Amendment purposes"); *Wiggins*, 330 S.C. at 548 n.15, 500 S.E.2d at 494 n.15 (explaining the curtilage of a home includes "outbuildings, yard around [the] dwelling, [and] garden" (citing 40 Am. Jur. 2d *Homicide* § 168 (1968))); *Ross*, 456 U.S. at 820-21 ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."); *id.* at 821 ("When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, . . . must give way to the interest in the prompt and efficient completion of the task at hand."). The language of this warrant was not restricted to any particular structure on the premises, and officers executed the warrant in a reasonable manner: they did not dig up the entirety of Cauthen's yard but instead limited their search to a seemingly recently-filled hole which appeared large enough to hold the murder weapon for which they were searching. *See Ramirez*, 523 U.S. at 71 ("The general touchstone of reasonableness which governs Fourth Amendment analysis, . . . governs the method of execution of the warrant."); *id.* ("*Excessive* or *unnecessary* destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." (emphasis added)).

Cauthen additionally argues that the gun's admission as evidence violates the South Carolina Constitution's prohibition against unreasonable invasions of privacy. *See* S.C. Const. Art. I, Sec. 10. We believe this argument is foreclosed by *State v. Weaver*'s holding that a finding of probable cause (such as the one supporting the warrant in this case) satisfies the constitution's requirement that any invasion of privacy be "reasonable." 374 S.C. 313, 322, 649 S.E.2d 479, 483 (2007).

### B. Bite Mark Evidence

Cauthen argues the trial judge erred in denying his motion to suppress the bite mark testimonies because their assertions constituted improper expert opinions. We disagree.

"If [a] witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which (a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) do not require special knowledge, skill experience, or training." Rule 701, SCRE. In *State v. McClinton*, our supreme court found a trial court did not err in admitting officers' testimonies indicating an injury on the defendant's hand appeared to be a bite mark. 265 S.C. 171, 176-77, 217 S.E.2d 584, 586 (1975). The court asserted the officers' statements were the "opinions of laymen" based on their personal observations which helped jurors understand the nature of the defendant's injury. *Id.* at 176-77, 217 S.E.2d at 586.

We hold the trial court did not abuse its discretion in allowing witnesses to testify they believed a bruise on Cauthen's arm resembled a bite mark. Here, like in *McClinton*, the officers presented lay opinions that the bruise on Cauthen *appeared* to be a bite mark. The officers' testimonies that the injury resembled a bite mark did not require any specialized knowledge or training and were based on their personal observations. Accordingly, we believe the trial court's decision to deny Cauthen's motion to suppress is consistent with established South Carolina jurisprudence. *See Pagan*, 369 S.C. at 208, 631 S.E.2d at 265 ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion."); *id.* ("An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."); Rule 701, SCRE ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which (a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) do not require special knowledge, skill experience, or training."); *McClinton*, 265 S.C. at 176-77, 217 S.E.2d at 586 (finding the trial court did not err in admitting officers' testimonies that an injury on the defendant's hand appeared to be a bite injury because the testimonies were the "opinions of laymen" based on their personal observations which helped jurors understand the nature of the defendant's injury).

**CONCLUSION**

Based on the foregoing, Cauthen's convictions and sentences are

**AFFIRMED.**

**THOMAS, HEWITT, and CURTIS, JJ., concur.**